[Civ. No. 44475. First Dist., Div. Four. Mar. 16, 1979.]

CARMEL VALLEY VIEW, LTD., Plaintiff and Appellant, v.
ERNEST MAGGINI, as Clerk, etc., Defendant and Respondent.

**COUNSEL**

Fulop, Rolston, Burns & McKittrick, Marvin G. Burns, Edmund S. Schaffer and K. Phillip Knierim for Plaintiff and Appellant.

Iver E. Skjeie, County Counsel, and Jose Rafael Ramos, Deputy County Counsel, for Defendant and Respondent.

**OPINION**

**CHRISTIAN, J.**—Carmel Valley View, Ltd., appeals from a judgment denying a writ of mandate (see Code Civ. Proc., § 1085) to compel Ernest Maggini, Clerk of the Board of Supervisors of Monterey County, to certify the county's approval of a tentative subdivision map (see Subdivision Map Act, Gov. Code, §§ 66410-66499).

In *Carmel Valley View, Ltd.* v. *Board of Supervisors* (1976) 58 Cal.App.3d 817 [130 Cal.Rptr. 249], the present appellant, a limited partnership which owns land in Monterey County, sought approval of a tentative subdivision map for a 500-acre parcel of land. The planning commission and board of supervisors found that the proposed use of septic tanks in the subdivision might result in the contamination of local water supplies. The planning commission and board of supervisors therefore denied approval of the map, on the ground that the "site is not physically suitable for the type of development." (Gov. Code, § 66474, subd. (c), formerly Bus. & Prof. Code, § 11549.5, subd. (c), repealed by Stats. 1974, ch. 1536, § 1, operative Mar. 1, 1975.) This court upheld the disapproval of the map.

Appellant then sought approval of a tentative subdivision map for an 80-acre portion of the large tract. The map covering the 80-acre portion is the subject of the present appeal. County authorities denied approval of the tentative subdivision map. Appellant argues that the map was approved by operation of law prior to the time the county acted.

The Subdivision Map Act (Gov. Code, §§ 66410-66499) establishes general statewide criteria for land development planning, and delegates authority to cities and counties to regulate the details of proposed subdivisions. The act provides for regulation and control of the design and improvement of subdivisions, considering their relation to adjoining areas; requires the subdivider to install streets and drains; seeks to prevent fraud and exploitation of purchasers and the public; and provides for preservation of open space for recreational use. Until a local authority approves a subdivision map, no parcels may be sold or developed. (See generally 3 Witkin, Summary of Cal. Law (8th ed. 1973 and supp. 1978) Real Property, §§ 22-26A.)

The Subdivision Map Act provides that a tentative map shall be filed with the appropriate local authority (Gov. Code, § 66452). The local authority then has 50 days in which to act on the tentative map. (See Gov. Code, §§ 66452.1; 66452.2, subd. (b).) Under certain circumstances, if the local authority fails to act within the 50-day period, the map is approved by operation of law (§ 66452.4).

In Monterey County, there are four entities concerned with the review of tentative subdivision maps: the planning department, the subdivision committee, the planning commission and the board of supervisors. (See generally County of Monterey Ord. No. 1713 (rev. Dec. 14, 1976) [hereafter subdivision ordinance or subd. ord.], §§ 5-6.) A subdivider "submits" the tentative map to the planning department (subd. ord., § 5.1, subd. (a)). The department then distributes the map to the subdivision committee (subd. ord., § 5.1, subd. (f)), which reports on the map to the planning commission (subd. ord., §§ 5.1, subd. (g); 6.6). Although the subdivider "submits" the tentative map to the planning department, the planning commission is the "advisory agency" (see Gov. Code, § 66415; subd. ord., § 6.7, subd. (b)) with which the tentative map must be *filed* (Gov. Code, § 66452). The subdivision ordinance defines the "date of filing": "The date of the filing of the tentative map shall be the date of the Planning Commission meeting following the presentation of the tentative map or corrected tentative map to the Planning Department." Once a tentative map is filed with the planning commis-

sion, the commission generally has 50 days to act on the map (see Gov. Code, § 66452.1; subd. ord., § 6.7, subd. (a)). The next step is for the map and the commission's written report to be forwarded to the board of supervisors (subd. ord., § 6.7, subd. (b)).

■ Applying these provisions to the present case, appellant submitted its tentative subdivision map to the planning department on December 29, 1976. The date of the planning commission meeting following the presentation of the tentative map to the planning department was January 12, 1977. The map therefore was filed on January 12, and under the 50-day rule, the commission had until March 2, 1977, to act on appellant's map. On February 3, appellant requested that the commission postpone its review of the map until March 9, another scheduled meeting date for the commission. The commission did not actually meet on March 9; instead it met on March 16. At the March 16 meeting, the commission voted to refer the map to the board of supervisors with the recommendation that an environmental impact report (EIR) be prepared. (On EIRs generally, see Pub. Resources Code, §§ 21000-21176; Cal. Admin. Code, tit. 14, §§ 15000-15203.)

Appellant had submitted an EIR when it filed the original tentative subdivision map for the 500-acre property. The planning commission apparently took the view that the 1974 EIR covering the entire 500-acre parcel would not be adequate for review of the 80-acre development. For that reason the commission recommended that a subsequent EIR (Pub. Resources Code, § 21166) be prepared.

The planning commission's action on March 16 came after the expiration of the 50-day period on March 2. However, the subdivision ordinance provides: "The Planning Commission shall act on any. tentative map within fifty days of the date of filing *unless this time period is extended by mutual consent of the subdivider and the Planning Commission.*" (Subd. ord., § 6.7, subd. (a); italics added. See also Gov. Code, § 66452.5.) Appellant on February 3 consented to an extension of the 50-day time period. The commission therefore did not violate the 50-day time limit when it acted on appellant's map on March 16.

The commission on March 16 did not approve or disapprove appellant's map; the commission simply referred the map to the board of supervisors with the recommendation that an EIR be prepared. Section 5.1, subdivision (g), of the subdivision ordinance is an ambiguous and confusing provision concerning tentative maps and EIRS: "If the

Planning Commission recommends to the Board of Supervisors that an Environmental Impact Report (EIR) be required under the criteria set forth in The Guidelines of the County of Monterey (pursuant to the California Environmental Quality Act of 1970) it shall advise the Board which shall then determine whether an EIR is required. If an EIR is required the preliminary or tentative map shall not be received by the Planning Commission until the EIR is certified by the Board of Supervisors. The preliminary or tentative map shall only be considered by the Planning Commission with the certified EIR. The subdivider may request that the preliminary or tentative map, report, and EIR (if required) be submitted to the Board of Supervisors for review and comment. When an EIR is required on a submitted tentative map, the Planning Commission shall either table the map with consent of the developer or recommend denial of it. The tentative map may then be refiled for consideration with the certified EIR." Apparently this provision means that if the commission determines that an EIR is necessary, the commission does not have authority to approve, conditionally to approve, or to disapprove, a tentative map. If the commission determines that an EIR is necessary, the commission has authority only (1) to recommend to the board of supervisors that an EIR be prepared, or (2) to recommend denial of the map. The Subdivision Map Act provides: "If the advisory agency is not authorized by local ordinance to approve, conditionally approve or disapprove the tentative map, it shall make its written report on the tentative map to the legislative body within 50 days after the filing thereof with its clerk." (Gov. Code, § 66452.1, subd. (a).) Because the planning commission was not authorized to approve or disapprove appellant's tentative map, the commission acted properly when it simply referred the map to the board of supervisors with the recommendation that an EIR be prepared. Appellant's map therefore was not approved by operation of law as of March 16, 1977.

On March 29, the board of supervisors reviewed the planning commission's recommendation. The board decided that a *subsequent* EIR would not be necessary. The board instead requested a *supplemental* EIR: the 1974 EIR would be adequate if appellant simply provided supplemental environmental information. (See generally Cal. Admin. Code, tit. 14, §§ 15067-15068.) Appellant submitted six pages of supplemental information to the planning department on April 13, 1977. (See Pub. Resources Code, § 21082.1.)

Government Code section 66452.2 provides: "If there is an advisory agency which is not authorized by local ordinance to approve, condition-

ally approve or disapprove the tentative map, at the next regular meeting of the legislative body following the filing of the advisory agency's report with it, the legislative body shall fix the meeting date at which the tentative map will be considered by it, which date shall be within 30 days thereafter and the legislative body shall approve, conditionally approve or disapprove the tentative map within such 30-day period." The board of supervisors did not expressly approve, conditionally approve, or disapprove appellant's tentative map at the March 29 meeting. However, by requesting a supplemental EIR, the board effectively placed appellant on notice that its map would be disapproved unless appellant provided the supplemental information. (Cf. subd. ord., § 5.1, subd. (g): "When an EIR is required on a submitted tentative map, the Planning Commission shall either table the map with consent of the developer or recommend denial of it. The tentative map may then be refiled for consideration with the certified EIR.") Thus, even though the board of supervisors did not expressly approve, conditionally approve, or disapprove appellant's map on March 29, the board satisfied section 66452.2 under either of two analyses. (1) The board implicitly disapproved appellant's map in the absence of the supplemental EIR. Appellant then submitted the supplemental information to the planning department and refiled a "corrected tentative map" (subd. ord., § 6.7, subd. (a)). (2) Alternatively, appellant implicitly consented to allow the board to remand the map to the planning commission for the commission's review in light of the supplemental EIR. Appellant implicitly consented to allow (a) the commission a reasonable time (cf. § 66452.1) to review the map in light of the supplemental EIR, and (b) the board a reasonable time (cf. §§ 66452.2, subd. (a), 66452.5, subd. (a)) to review the map, supplemental EIR, and commission report. The result of this appeal would be the same under either analysis. If the implied consent analysis is used, the reasonable times to which appellant implicitly consented are the same as the statutory time limits which would apply if the refiling analysis were used. This is indicated by the cross-references to the statutory time limits of sections 66452.1, 66452.2, subdivision (a), and 66452.5, subdivision (a) as "reasonable times." For the sake of simplicity, the "refiling" analysis will be used.

On April 13, 1977, appellant submitted six additional pages of environmental information to the county planning department. On May 26, the subdivision committee reviewed the information and forwarded the map and supplemental data to the planning commission.

Appellant's map was on the agenda of the planning commission meeting of June 15, 1977. The county senior planner stated that the

supplemental information had been forwarded to each of the planning commission members, but some commissioners stated that they had not received the information. Over appellant's objection, the commission voted to postpone consideration of appellant's map until July 13. On July 13, the commission disapproved appellant's tentative subdivision map. On August 9, 1977, the board of supervisors disapproved appellant's map.

When was appellant's map filed (or refiled) under the terms of the ordinance? The subdivision ordinance contains an EIR certification requirement: "If an EIR is required the preliminary or tentative map shall not be received by the Planning Commission until the EIR is certified by the Board of Supervisors. The preliminary or tentative map shall only be considered by the Planning Commission with the certified EIR. The subdivider may request that the preliminary or tentative map, report, and EIR (if required) be submitted to the Board of Supervisors for review and comment. When an EIR is required on a submitted tentative map, the Planning Commission shall either table the map with consent of the developer or recommend denial of it. The tentative map may then be refiled for consideration with the certified EIR." (Subd. ord., § 5.1, subd. (g). See also Cal. Admin. Code, tit. 14, § 15085.)

The sentence, "The tentative map may then be refiled for consideration with the certified EIR," is crucial. The supplemental environmental information which appellant submitted to the planning department on April 13 was not an EIR. Appellant was simply submitting information for the county itself to prepare an EIR. (See Pub. Resources Code, § 21082.1.*) The 1974 EIR and appellant's April 13 supplemental environmental information together constituted a "supplemental EIR." (Cf. Pub. Resources Code, § 21166 [subsequent EIR]; Cal. Admin. Code, tit. 14, §§ 15067-15068.) The language of the certification requirement refers to EIRs generally, but does not specifically designate supplemental EIRs. The purpose of the certification requirement is to allow the board of supervisors "to evaluate critically the environmental document and the manner in which technical data are used." (Cal. Admin. Code, tit. 14, § 15160.5.) This concern applies equally to supplemental EIRs and EIRs

---

*Public Resources Code section 21082.1 provides:

"Any environmental impact report or negative declaration prepared pursuant to the requirement of this division shall be prepared directly by, or under contract to, a public agency.

"This section is not intended to prohibit, and shall not be construed as prohibiting, any person from submitting information to the public agency responsible for preparing an environmental impact report or negative declaration. Such information may be submitted in any format and may be included in whole or in part in any such report or declaration."

generally. Thus the certification provision required the board of supervisors to certify the supplemental EIR before appellant could refile its tentative map.

Although the 1974 EIR was certified in connection with the large parcel, the board of supervisors may never have actually certified the supplemental EIR. However, the board did accept the information as adequate. Thus there was substantial compliance with the certification requirement. Moreover, the board accepted the supplemental EIR sometime between the May 15 and June 15 planning commission meetings. This was some 30 to 60 days after appellant submitted the supplemental information to the planning department on April 13. The board of supervisors acted within a reasonable time when it accepted the supplemental EIR between May 15 and June 15. (See Cal. Admin. Code, tit. 14, § 15160, subd. (c) [EIR review periods "should not be less than 30 days nor longer than 90 days except in unusual situations."].)

Once the board accepted the supplemental EIR as adequate, appellant's map was ready to be refiled. The "date of filing" of a "corrected tentative map" shall be the date of the planning commission meeting following the presentation of the corrected tentative map to the planning department. (Subd. ord., § 6.7, subd. (a).) The subdivision ordinance does not define "corrected tentative map." However, the certification requirement provides: "If an EIR is required the preliminary or tentative map shall not be received by the Planning Commission until the EIR is certified by the Board of Supervisors. The preliminary or tentative map shall only be considered by the Planning Commission with the certified EIR. . . . When an EIR is required on a submitted tentative map, the Planning Commission shall either table the map with consent of the developer or recommend denial of it. The tentative map may then be refiled for consideration with the certified EIR." (Subd. ord., § 5.1, subd. (g).) The certification requirement and the "date of filing" provision, when read together, indicate that appellant's map and the certified (or accepted as adequate) supplemental EIR together constitute the "corrected tentative map." The date of filing of the corrected tentative map therefore was June 15, the date of the first planning commission meeting following the acceptance by the board of the supplemental EIR. June 15 was the first date on which the commission had access to both appellant's map and the certified supplemental EIR.

Under the 50-day rule, the planning commission had from June 15 until August 5 to act on the map (Gov. Code, § 66452.1). The commission

disapproved the map on July 13, within 50 days. The board of supervisors disapproved the map on August 9, within the statutory time period (see §§ 66452.2, subd. (a), 66452.5). The court acted correctly when it determined that appellant's map was never approved by operation of law.

The judgment is affirmed.

Caldecott, P. J., and Rattigan, J., concurred.

A petition for a rehearing was denied April 4, 1979.