Eva KOLLSMAN, City National Bank, Tashi Land Corporation, a New York corporation, Plaintiffs-Appellees,

v.

CITY OF LOS ANGELES, a municipal corporation, Defendant-Appellant.

No. 83–5798.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 4, 1984.

Decided July 17, 1984.

Reinhardt, Circuit Judge, dissented and filed opinion.

Michael M. Berger, Fadem, Berger, McIntire & Norton, Los Angeles, Cal., for plaintiffs-appellees.

William L. Waterhouse, Los Angeles, Cal., for defendant-appellant.

Joseph Barbieri, Deputy Atty. Gen., San Francisco, Cal., for amicus Cal. Coastal Comm. et al.

Before SNEED and REINHARDT, Circuit Judges, and SOLOMON *, District Judge.

SNEED, Circuit Judge:

Paul Kollsman sought approval from the City of Los Angeles to develop an eighty-five acre subdivision. The City denied the application on the ground that Kollsman had failed to submit requested information. Kollsman filed an action in federal district court alleging that the City's land use regulations violate the Fifth and Fourteenth Amendments and provisions of state law. Without addressing the federal constitutional claims, the district court held that Kollsman's subdivision application must be deemed approved under California law. We conclude that the district court, 565 F.Supp. 1081, should have abstained and allowed state courts to decide the questions of land use planning. We therefore vacate the judgment of the district court and remand.

I.

FACTS AND PROCEEDINGS BELOW

Paul Kollsman proposed to develop a seventy lot subdivision on an eighty-five acre tract of land located in the Santa Monica Mountains. On January 12, 1977, Kollsman submitted to the City of Los Angeles a proposed tract map and an "Environmental Assessment Form." The City notified Kollsman on February 16, 1977, that it would not accept his subdivision application before he submitted a draft Environmental Impact Report (EIR). Kollsman submitted a first draft EIR on July 28, 1977.

By a memorandum dated August 16, 1977, the City informed Kollsman that two additional sections should be added to the EIR. Kollsman submitted a second draft EIR on September 13, 1977. The City circulated this draft for comment among concerned homeowner groups. On November 30, 1977, the City sent Kollsman a memorandum requesting further environmental information. The City sought information on development alternatives that would conform to the City's "slope density formula" and utilize "cluster development" as

* Honorable Gus J. Solomon, Senior United States District Judge for the District of Oregon, sitting

by designation.

opposed to individual units.[1] Four months later, on March 3, 1978, Kollsman submitted certain information requested by the City. He did not, however, submit information on alternative development plans.

The City informed Kollsman in a letter dated May 11, 1978, that the draft EIR could not be completed until he submitted information on alternative development plans and the slope density formula. On advice of counsel, Kollsman did not provide the additional information. The City mailed Kollsman a form notice of "Determination of Incompleteness of Application" on November 22, 1978. Two months later, on January 12, 1979, the City informed Kollsman that a public hearing could not be held on his application without completion of the EIR. On November 14, 1979, the City sent Kollsman a "Notice of Intent to Disapprove without Prejudice" for the reason that he had not submitted requested information. The City denied Kollsman's subdivision application on November 26, 1979.[2]

Concurrent with the City's processing of the subdivision application, Kollsman contested the land use regulations in federal district court. Kollsman filed a six-count complaint on March 1, 1977. Counts I and III sought to invalidate the slope density formula on constitutional theories of inverse condemnation and equal protection. Count II requested $6.3 million in damages for inverse condemnation. Counts IV, V, and VI involved state law claims. The district court granted the City's motion to dismiss Count V on April 25, 1977, and granted summary judgment in favor of the City on Counts IV and VI on March 28, 1978. In March and April of 1979, a seven-day bench trial was held on the constitutional claims.

On March 21, 1980, Kollsman filed a motion to submit additional evidence that raised, for the first time, the argument that his subdivision application should be "deemed approved" pursuant to California statutes. The court held two additional days of trial in April 1981. On November 11, 1981, the court issued an opinion stating that it had found for the plaintiff on the issue of liability and directing plaintiff's counsel to submit proposed findings of fact and conclusions of law. Over the City's opposition, the court on February 22, 1982, granted Kollsman's motion to amend the complaint to conform to proof. The amendment added two counts: Count VII asserts that Kollsman's application must be "deemed approved" under California law, and Count VIII claims rights under 42 U.S.C. § 1983.

On February 2, 1983, the district court held that Kollsman's subdivision application must be "deemed approved" pursuant to California Government Code Sections 65950 and 65956(a).[3] This result is based

---

1. The "slope density formula" is part of the "community plan" for the Bel Air-Beverly Crest District of Los Angeles, which includes Kollsman's land. The City prepares community plans as part of the general plan required by California statutes. See Cal.Gov.Code § 65302. The community plan shows specific land uses and densities of development for the various communities of the City. The City Planning Commission adopted the Bel Air-Beverly Crest District plan on March 4, 1976; the Los Angeles City Council endorsed the plan on January 13, 1977.

The slope density formula determines the number of units allowed on land designated as "minimum density housing." Under the formula, the maximum number of dwelling units depends on the average natural slope of the land. The slope density formula indicates that no more than nine dwelling units may be permitted on Kollsman's 85 acres.

2. The City notified Kollsman at this time that he could appeal the denial of his application to the City Planning Commission. On December 20, 1979, the district court approved a stipulation agreed to by Kollsman and the City suspending the administrative appeal.

3. Cal.Gov.Code § 65950 provides in pertinent part:

Any public agency which is the lead agency for a development project shall approve or disapprove such project within one year from the date on which an application requesting approval of such project has been received and accepted as complete by such agency. Cal.Gov.Code § 65956(a) provides:

In the event that a lead agency or a responsible agency fails to act to approve or to disapprove a development project within the time limits required by this article, such failure to act shall be deemed approval of the development project.

on the court's conclusion that Kollsman's application was complete in fact and must be "deemed complete" on November 22, 1978. The court asserted that this conclusion is valid even though the City sent Kollsman a notice on that date stating that his application was incomplete. The district court found that the City could not in good faith determine that the application was incomplete when Kollsman had submitted all information that the City could lawfully request under applicable California statutes. The application was complete, and we must read its letter of November 22, 1978 to say that. Because the City did not act on Kollsman's application within one year from November 22, 1978, the court concluded that the application must be deemed approved.

The City filed a timely notice of appeal.[4]

Count VII raises difficult state law issues of great importance to the people of California. As already indicated, abstention is the appropriate course here.

We, therefore, vacate and remand.

## II.

## DISCUSSION

The abstention doctrine based on *Railroad Commission v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941) is a narrow exception to the district court's duty to decide cases properly before it. *Pullman* allows postponement of the exercise of federal jurisdiction when "a federal constitutional issue ... might be mooted or presented in a different posture by a state court determination of pertinent state law." *C–Y Development Co. v. City of Redlands*, 703 F.2d 375, 377 (9th Cir.1983) (quoting

*County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 189, 79 S.Ct. 1060, 1063, 3 L.Ed.2d 1163 (1959)).

▪ We apply an abuse of discretion test in reviewing district court abstention decisions. *E.g., C–Y Development Co.*, 703 F.2d at 377. This standard of review, however, does not preclude invoking abstention in cases in which there exist compelling reasons to allow state courts to resolve issues of state law. *Cf. Richardson v. Koshiba*, 693 F.2d 911, 915–18 (9th Cir. 1982) (ordering *Pullman* abstention after raising issue *sua sponte*). We believe that this is such a case.[5]

We have relied on three criteria for the application of *Pullman* abstention: (1) the complaint must touch a sensitive area of social policy into which the federal courts should not enter unless there is no alternative to adjudication; (2) a definitive ruling on the state issues by a state court could obviate the need for constitutional adjudication by the federal court; and (3) the proper resolution of the potentially determinative state law issue is uncertain. *Richardson*, 693 F.2d at 915; *see C–Y Development Co.*, 703 F.2d at 377; *Canton v. Spokane School Dist. No. 81*, 498 F.2d 840, 845 (1974).

▪ The first and second criteria are clearly satisfied in this case. We have repeatedly noted that land use planning is a sensitive area of social policy that meets the first requirement for *Pullman* abstention. *E.g. C–Y Development Co.*, 703 F.2d at 377; *Santa Fe Land Improvement Co. v. City of Chula Vista*, 596 F.2d 838, 840 (9th Cir.1979); *Ranchos Palos Verdes*

4. Paul Kollsman died before the district court entered its judgment. We granted the motion of his widow, Eva Kollsman, and City National Bank for substitution as parties herein. Mrs. Kollsman and the bank are administrators of Paul Kollsman's estate. For convenience, we will refer to appellees as "Kollsman."

5. Our earlier refusal to grant a writ of mandamus requiring the district court to abstain, No. 78–1557 (9th Cir. June 7, 1978), does not preclude us from now holding that the district court should have abstained. First, we apply a

more stringent standard of review under our mandamus jurisdiction than when reviewing on direct appeal a district court's order under the abuse of discretion standard. *Badham v. U.S. Dist. Ct. for N.D. Cal.*, 721 F.2d 1170, 1171 (9th Cir.1983). Second, our order denying the petition for mandamus was issued before Kollsman raised the argument that his application should be deemed approved under California law. Thus, our earlier order did not consider the state law issues now involved in the case.

*Corp. v. City of Laguna Beach,* 547 F.2d 1092, 1094 (9th Cir.1976). The second requirement is also met. The conclusion eventually reached by the district court illustrates that a ruling on Kollsman's state law claims could obviate the need to address the federal constitutional claims.

We also find that the third requirement for *Pullman* abstention is met here. The district court's decision rests on an interpretation of interlocking statutory provisions enacted during the course of this litigation. The district court acknowledged that there have been few state cases that interpret the particular California code sections underlying its decision. Slip op. at 21. Moreover, appellants persuasively argue that resolution of this case requires attention not only to Chapter 4.5 of the California Government Code, the focus of the district court's opinion, but also consideration of the interrelation of that chapter with the Subdivision Map Act and the California Environmental Quality Act.[6]

The uncertainty of state law issues is illustrated by comparing the reasoning of the district court with the City's arguments before this court. For example, the district court relied on section 65941 of the California Government Code to conclude that the City could not in good faith refuse to accept Kollsman's application as complete.[7] That section, the court held, prohibits the City from requiring Kollsman to submit the "informational equivalent" of an EIR. Because the district court found that Kollsman had submitted sufficient information to allow the City to prepare a legally adequate EIR, the court held that the City must consider Kollsman's application complete even though the City insisted that it was not. The City rejects this interpretation and argues that the request for information was authorized by the City's administrative guidelines for evaluating a development project's consistency with the general plan.[8] Moreover, the City maintains that section 65941 was not applicable to local agencies at the time it determined the application was incomplete.[9]

The district court and the City also differ on the completeness of Kollsman's application. The district court noted that section 65943 of the California Government Code requires that "[i]n the event that the application is determined not to be complete, the

---

6. The California Environmental Quality Act, Cal.Pub.Res.Code § 21000 *et seq.,* requires preparation of an EIR whenever a project may have a significant adverse impact on the environment. *No Oil, Inc. v. City of Los Angeles,* 13 Cal.3d 68, 118 Cal.Rptr. 34, 529 P.2d 66 (1974).

   The California Subdivision Map Act prohibits the City from approving projects that do not comply with the general and specific area plans. Cal.Gov.Code §§ 66473.1, 66474.61; *Woodland Hills Residents Ass'n, Inc. v. City Council of the City of Los Angeles,* 44 Cal.App.3d 825, 118 Cal. Rptr. 856 (1975).

7. Cal.Gov.Code § 65941 provides:

   The information compiled pursuant to section 65940 shall also indicate the criteria which such agency will apply in order to determine the completeness of any application submitted to it for a development project.

   In the event that a public agency is a lead agency for purposes of Division 13 (commencing with Section 21000) of the Public Resources Code, such criteria shall not require the applicant to submit the informational equivalent of an environmental impact report as part of a complete application; provided, however, that such criteria may require sufficient information to permit the agency to

make the determination required by Section 21080.1 of the Public Resources Code.

8. The City Office of Planning and Research adopted "Permit Guidelines" to carry out Chapter 4.5 of the Government Code. Permit Guidelines § 1087.1, effective January 31, 1978, provides:

   Local agencies should adopt as one of their criteria for completeness the requirement that the development project be shown in the application to be consistent with the applicable general plan required by Government Code sections 65300 *et seq.*

   The City argues that this provision authorized it to demand that Kollsman submit information on development alternatives consistent with the slope density formula.

9. Section 65940, referred to in the first paragraph of § 65941, did not apply to local agencies until June 30, 1983. Before it was amended in 1982, *see* 1982 Cal.State Ch. 84, § 1, the first paragraph referred only to state agencies.

   Kollsman responds by noting that the language in the second paragraph of § 65941 refers to "a public agency" and that the City comes under the statutory definition of "public agency." *See* Cal.Gov.Code § 65932.

agency's determinations shall specify those parts of the application which are incomplete and shall indicate the manner in which they can be made complete." The district court found that the City's letter of November 22, 1978, did not satisfy this requirement and concluded that the City's determination of incompleteness was both incorrect and ineffective. It therefore concluded that the City had failed to satisfy the time limits of section 65924.[10] The district court held that the legislature intended that if the substantive requirements of section 65943 are not satisfied within the specified time limits, a development appli-

cation should be deemed complete.[11] Therefore, Kollsman's application must be deemed accepted as complete on November 22, 1978.[12]

The City disputes each link in the district court's reasoning. The City argues that the district court erred by applying section 65943, as amended, retroactively to Kollsman's application,[13] and even if the section applies retroactively, an application should not be deemed complete even when an agency makes a timely, but erroneous determination that an application is incomplete. The City insists that the earliest

10. Cal.Gov.Code § 65924 provides:

With respect to any development project an application for which has been accepted as complete prior to January 1, 1978; the deadlines specified in Sections 65950 and 65952 shall be measured from January 1, 1978. With respect to such application received prior to January 1, 1978, but not determined to be complete as of that date, a determination that the application is complete or incomplete shall be made not later than 60 days after the effective date of the act amending this section in 1978.

The amendment adding the last sentence to § 65924 became effective on September 26, 1978. Thus, the City had until November 26, 1978, to determine whether Kollsman's application was complete.

11. Section 65943 provides in pertinent part:

Not later than 30 calendar days after any public agency has received an application for a development project, such agency shall determine in writing whether such application is complete and shall immediately transmit such determination to the applicant for the development project.

As originally enacted, § 65943 did not specify the consequences of a public agency's failure to make the determination within the specified time limit. Moreover, § 65924 provides a separate time period for the determination of completeness on applications, such as Kollsman's, that were submitted before January 1, 1978. See supra note 10. In 1979, § 65943 was amended to provide that "if such written determination is not made within 30 days after receipt of the application, the application shall be deemed complete for purposes of this chapter." This amendment became effective on October 2, 1979.

12. The district court's rationale for concluding that the application must be deemed complete on November 22, 1978, is somewhat opaque. The district court stated that as early as May 12, 1978, the City had all of the information that it

could lawfully require Kollsman to supply. At 1095. The City, the district court found, suspended processing of the application and did not make a bona fide determination of completeness or incompleteness at any time prior to November 22, 1978. Id. After observing that the legislature intended that applications should be deemed complete "in the event of failure to meet the substantive requirements prescribed in § 65943 within the time limits," and that Kollsman's application was in fact complete, the district court concluded that the application must be deemed complete as of November 22, 1978. At 1095.

Kollsman argues that a letter from the City dated November 14, 1979, may be read as a concession that the application was complete on November 22, 1978. The letter notified Kollsman that the City intended to disapprove the application on November 21, 1979, in order to meet the one-year deadline. The district court observed that "the notice of November 14, 1979, reflects an awareness that the Kollsman application was complete in fact on November 22, 1978." At 1096. Nonetheless, the district court did not specifically rely on this observation in concluding that the application must be deemed complete on November 22, 1978. Instead, the court made its comments concerning the November 14, 1979, letter when it considered whether the application should be deemed approved. See at 1096.

13. The legislature specifically addressed the problem of pending applications when it amended § 65924. See supra note 10. When the legislature amended § 65943, however, it did not distinguish between pending and subsequent applications.

The City argues that before the effective date of the "deemed complete" provision of § 65943, an applicant's remedy for failure to comply with the time limits was to seek a writ of mandamus directing the agency to make the completeness determination.

possible date that Kollsman's application could be deemed complete is November 26, 1978.[14] If the application is deemed complete on this date, the City's rejection of the application on November 26, 1979 satisfies the one-year time limit provided by section 65950.[15]

Even if we assume that the district court correctly held that Kollsman's application must be deemed complete on November 22, 1978, uncertainty still obscures the legal consequences of that holding. The district court concluded that because the City had not satisfied the one-year deadline to approve or disapprove a completed application, the application must be deemed approved. At 1096. Various California state agencies, participating as *amicus curiae*,

argue that Kollsman's application may not be deemed approved because he failed to submit a project proposal that complies with the California Environmental Quality Act and the Subdivision Map Act.[16] The City argues that if Kollsman's application is deemed approved, such approval must be subject to appeal to the City Planning Commission and the City Council.[17] Alternatively, the City maintains that Kollsman's subdivision may only be deemed approved subject to the slope density formula.

These state law issues require us to conclude that the district court abused its discretion by failing to abstain. This case implicates the concerns underlying the first and third criteria for *Pullman* abstention.[18] Land use planning is a sensitive

---

**14.** The City was not required to make a determination of the completeness of Kollsman's application before November 26, 1978. *See supra* note 10. The City argues that if the district court correctly held that the determination of incompleteness on November 22, 1978, was ineffective, the proper conclusion is that this determination must be disregarded. Thus, if § 65943 applies retroactively, the City reasons that the earliest date that the application could be deemed complete is November 26, 1978.

**15.** *See supra* note 3. If the one-year period commenced on November 26, 1978, the City's disapproval of the project on November 26, 1979 was timely. November 25, 1979 was a Sunday, which extended the City's time to act until the next working day. *See* Cal.Civ.Code §§ 7, 10. The City also maintains that its requests for additional information should be interpreted as implicit denials of Kollsman's application. *Cf. Carmel Valley View, Ltd. v. Maggini*, 91 Cal.App.3d 318, 323, 155 Cal.Rptr. 208, 211–12 (1979) (request for supplemental information considered implicit disapproval for purposes of "deemed approved" provision of Subdivision Map Act). Kollsman attempts to distinguish *Maggini* by arguing that here the district court found that the City acted in bad faith.

**16.** *See supra* note 6. Kollsman counters by arguing that the later enactment of Chapter 4.5 of the California Government Code takes precedence over the earlier legislation.

**17.** The City relies on *Woodland Hills Residents Ass'n, Inc. v. City Council*, 44 Cal.App.3d 825, 118 Cal.Rptr. 856 (1975), which construed a then effective "deemed approved" provision of the Subdivision Map Act. Appellants challenged an advisory agency's approval of a subdivision. The trial court concluded that this action was deemed approved by the Planning

Commission and the City Council because each body had voted by a tie vote to deny appeal from the advisory agency's decision. The Court of Appeals reversed, and held that the City Council had to determine if the project was consistent with the City's general plan. *See id.* at 830–31, 837–38, 118 Cal.Rptr. at 858–59, 863–69.

**18.** The Supreme Court's recent decision in *Pennhurst State School & Hospital v. Halderman*, —— U.S. ——, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984), indicates that abstention often will be appropriate when state land use regulations are challenged on state and federal grounds. *Pennhurst* held that the Eleventh Amendment bars federal courts from ordering state officials to conform their conduct to state law. The Court acknowledged that under *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), and *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), the Eleventh Amendment poses no barrier to prospective relief against state officials for violation of federal law. Justice Powell, writing for the Court in *Pennhurst*, noted:

A federal court's grant of relief against state officials on the basis of state law, whether prospective or retroactive, does not vindicate the supreme authority of federal law. On the contrary, it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law. Such a result conflicts directly with the principles of federalism that underlie the Eleventh Amendment. We conclude that *Young* and *Edelman* are inapplicable in a suit against state officials on the basis of state law.

104 S.Ct. at 911.

In a suit in which relief would run against the state, *Pennhurst* indicates that plaintiffs must go

area of social policy. At issue here is the application of Chapter 4.5 of the California Government Code, which has as its purpose the establishment of clear requirements for the approval of development projects and the expediting of decisions on such projects. Cal.Gov.Code section 65921. Chapter 4.5, however, must be reconciled with earlier legislation, such as the California Environmental Quality Act, which requires a balancing of the policies underlying Chapter 4.5 with the concerns reflected in the earlier enactments. This task is best left to the state courts. *Cf. Rancho Palos Verdes Corp.,* 547 F.2d at 1095 (abstention appropriate in case involving recently enacted "web of statutes" that attempts to "grapple with difficult land use problems"). We conclude, therefore, that abstention is required in this case.[19]

### III.

Because the district court should have abstained, we vacate its judgment and remand. At the request of either party, the district court should retain jurisdiction of the federal constitutional issues pending proceedings in the state courts. *See, e.g., Migra v. Warren City School District Bd. of Ed.,* — U.S. —, 104 S.Ct. 892, 898 n. 7, 79 L.Ed.2d 56 (1984); *England v. Louisiana State Board of Medical Examiners,*

to state court to obtain relief based on state law. This is true even in cases in which the state law claims are pendent to federal claims. *See id.* at 919–20. Our holding in this case does not depend on *Pennhurst;* we need not determine if Kollsman's suit is in fact a suit against the state. *Cf. id.* at 920 n. 34 (noting that suit nominally against local government officials is barred if relief effectively runs against state). We merely observe that state courts may be the sole forum for effective relief for state law claims in land use cases involving state and federal law. This fact provides a very persuasive grounds for abstention in such cases.

**19.** Kollsman relies on *Shamrock Development Co. v. City of Concord,* 656 F.2d 1380 (9th Cir. 1981) and *Midkiff v. Tom,* 702 F.2d 788 (9th Cir.1983) to support his argument that abstention is not required in this case. We believe that *Shamrock Development* and *Midkiff* are distinguishable. In the former case, we held that although abstention would have been appropriate, the district court had not abused its discre-

375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964); *Richardson,* 693 F.2d at 918.

VACATED and REMANDED.

REINHARDT, Circuit Judge, dissenting:

I respectfully dissent.

I believe that the majority errs in holding that the district court abused its discretion by not abstaining from deciding the merits. There are no uncertain state law questions that must be resolved here. Rather, the case turns principally on a factual issue with a painfully obvious answer. Moreover, I believe that the majority's disposition of the case illustrates how procedural rules intended to aid the federal judiciary in performing its duties can, if misapplied, serve to deprive parties of a fair and adequate resolution of their dispute. By unnecessarily and improperly invoking the abstention doctrine, the majority does a disservice to both parties, and no favor to the federal courts. Rather than vacate the district court's decision on abstention grounds, we should reverse its state law decision on the merits and remand the case to the district court for resolution of Kollsman's constitutional claims.

In January 1977, Paul Kollsman submitted to the City of Los Angeles an application for the development of a seventy lot

tion by retaining the case. In *Shamrock Development,* a developer claimed that a city had violated state law and the state and federal constitutions by conditioning approval of a subdivision on the developer's dedication of land for city street expansion. We believe that the case before us involves issues that are more complicated and more intrusive into a sensitive area of social concern than those involved in *Shamrock Development.* In *Midkiff,* the state law issues were not uncertain and their resolution would not obviate the need to address federal constitutional issues. *See* 702 F.2d at 789 n. 1.

Kollsman also argues that abstention will create unjust delay in the determination of his state law claims. This consequence, however, must be accepted when the demands of comity and federalism require abstention. *See C-Y Development Co.,* 703 F.2d at 381. Nor does the fact that Kollsman also raised claims under 42 U.S.C. § 1983 alter our conclusion that abstention is appropriate. *See id.*

838

subdivision. While that application was pending, he filed an action in district court containing both state and federal claims.[1] After considering the arguments for abstaining, the district court ruled that abstention was not appropriate.[2] The district court went on to dispose of the action on state law grounds and never reached the federal claims.

The district court held, in what must have been a surprise to all concerned, that, under California law, Kollsman's application was accepted as complete on November 22, 1978 and was deemed to be approved as a result of the City's failure to act by November 22, 1979. Apparently finding it difficult to accept the district court's singular approach to the issue, the majority concluded that there are too many uncertain questions of state law involved and abstention is therefore warranted. I, on the other hand, think it clear that the district court wholly ignored the plain requirements of the California Government Code as well as the uncontrovertible facts when it decided that the City had accepted Kollsman's application as complete. In my opinion, there are no unclear or uncertain questions of state law that require resolution in this case.

The district court, intentionally or otherwise, circumvented the provisions of California law by finding as a matter of fact that the City had accepted Kollsman's application as complete. Because its critical finding of fact is so clearly erroneous, the district court's decision cannot stand. It is obvious from the record before us that the City did the precise opposite of that which the district court says it did. The City *expressly* found that the application was incomplete, not complete. Moreover, even if, under California law, Kollsman's application could have been deemed complete, that event would not have occurred until several days late on November 26, 1978.

Even in that case, the City could not be deemed to have approved the application, for the City subsequently explicitly disapproved the application in a timely manner. Thus, contrary to the district court's assertion, it is absolutely clear that the City *never* approved the application, explicitly or by operation of law.

The majority unnecessarily raises many state law questions that it says have unclear answers. However, we need not resolve any of those state law issues in order to decide this case. We can and must view the issue of the appropriateness of abstention differently after the district court has decided the case on the merits than we would at the outset of the litigation. When an abstention motion is made early in the proceedings, the court will often not be in a position to know which issues will prove determinative or even which issues it will be necesary to consider. Much may depend on how the parties decide to develop facts that are not yet before the court and how the court then resolves particular factual questions: whether or not a court must proceed down a particular road often will be determined by the decisions that are made at the preceding crossroad. However, after the trial is over and the facts and the law have both been fully explored, we can determine with certainty what, if any, state law questions *must* be decided and whether the answer to any such questions is unclear. The majority therefore errs in justifying abstention by raising many state law questions simply because at first blush they may appear to be of some relevance; in fact, a careful review of the fully developed record demonstrates that those questions are wholly irrelevant to the *proper* resolution of the dispute before us.

The majority errs in another basic respect in its approach to the abstention doc-

1. Although the majority does not specify the precise basis of the district court's jurisdiction, the district court stated that it had both diversity and federal question jurisdiction. We have jurisdiction over the appeal of the district court's final decision under 28 U.S.C. § 1291 (1982).

2. In deciding not to abstain, the district court suggested that its decision turned on the conclusion that it was capable of interpreting the state law "with minimum interference in state processes."

trine. It is not enough simply to say, as the majority does: the district court says X and the City says Y; therefore, there is a dispute as to state law; accordingly, the law is unclear and we must abstain. In order to conclude that abstention is appropriate, a court must at least identify which issues are critical to the outcome of the litigation and which involve questions to which the answer is, in *its* opinion, *actually* unclear. The majority does neither here.

## THE INAPPLICABILITY OF THE ABSTENTION DOCTRINE

The general rule concerning the exercise of federal jurisdiction was once simple:

The judiciary cannot, as the legislature may, avoid a measure, because it approaches the confines of the constitution .... With whatever doubts, with whatever difficulties, a case may be attended, we must decide it, if it be brought before us. We have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given. The one or the other would be treason to the constitution.

*Cohens v. Virginia,* 19 U.S. (6 Wheat.) 264, 404, 5 L.Ed. 257 (1821) (Marshall, C.J.).

Over time, however, the Supreme Court has made limited inroads on that rule. One example is the abstention doctrine, originally created in *Railroad Commission of Texas v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). "[T]he Supreme Court has stated that the doctrine of abstention 'is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it.' " *Hillery v. Rushen,* 720 F.2d 1132, 1137 (9th Cir.1983) (quoting *County of Allegheny v. Frank Mashuda Co.,* 360 U.S. 185, 188, 79 S.Ct. 1060, 1063, 3 L.Ed.2d

1163 (1959)); *see, e.g., Colorado River Water Conversation District v. United States,* 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976); *C–Y Development Co. v. City of Redlands,* 703 F.2d 375, 377 (9th Cir.1983).

Designed for reasons of federalism and for the purpose of making it possible to avoid the unnecessary resolution of constitutional questions, the abstention doctrine allows a district court to exercise its equitable powers in extraordinary instances to abstain from resolving state law issues. *See, e.g., Pue v. Sillas,* 632 F.2d 74, 78 (9th Cir.1980) (citing *Baggett v. Bullitt,* 377 U.S. 360, 84 S.Ct. 1316, 12 L.Ed.2d 377 (1964)). In reviewing a district court's decision whether "compelling reasons" justify application of the abstention doctrine, we apply an abuse of discretion standard. *See, e.g., Midkiff v. Tom,* 702 F.2d 788, 789 n. 1, 799 (9th Cir.1983), *reversed on other grounds, sub nom. Hawaii Housing Authority v. Midkiff,* — U.S. —, 104 S.Ct. 2321, 81 L.Ed.2d 186 (1984). We have been extremely hesitant to find that a district court abused its discretion in deciding state law questions. For example, in a case involving a municipal zoning decision, we refused to hold that the district court abused its discretion in deciding not to abstain; we did so even though it "was a case in which abstention would have been advisable, and well within the discretion of the court .... State law questions clearly predominated over federal questions. But we have no basis for holding that it was an abuse of discretion to retain the case." *Shamrock Development Co. v. City of Concord,* 656 F.2d 1380, 1385 (9th Cir.1981).[3]

As the majority correctly restates, we have relied on three criteria in evaluating

**3.** The majority's decision is based entirely on its view that the district court should have abstained. Thus, to reach its result, the majority was required to apply an abuse of discretion standard. It is far from clear why the majority believes that the district court's decision was not only wrong but that it constituted an abuse of discretion. I, on the other hand, believe the district court was right not to abstain but that it based that decision on the wrong reasons. I

first review the district court's substantive decisions regarding state law issues under the standard we normally use to review such decisions. Having concluded that the district court was wholly incorrect regarding the merits of those state law issues, I believe it is then appropriate to review the abstention issue under a *de novo* standard. However, I would reach the result I do here regardless of the standard of review applicable to any of these questions.

the propriety of the application of the abstention doctrine. *See, e.g., Canton v. Spokane School District No. 81,* 498 F.2d 840, 845 (9th Cir.1974). The first criterion is that the complaint must involve a "sensitive area of social policy" that is best left to the states to address.[4] The second criterion is that a ruling on the state law issue may render unnecessary the resolution of a constitutional question. The final factor, which I believe is dispositive here, is whether the proper resolution of the possibly determinative state law issue is *uncertain. See, e.g., Pue v. Sillas,* 632 F.2d at 78–81.

. If the proper resolution of the state law question is *certain,* abstention is improper. Even if the particular issue has never been addressed by the state courts, the proper resolution of a state law question may be certain. *See, e.g., Harman v. Forssenius,* 380 U.S. 528, 534–35, 85 S.Ct. 1177, 1188–89, 14 L.Ed.2d 50 (1965); *Meredith v. Winter Haven,* 320 U.S. 228, 232, 234–35, 64 S.Ct. 7, 10–11, 88 L.Ed. 9 (1943); *Hillery v. Rushen,* 720 F.2d 1132, 1137 (9th Cir.1983); *Midkiff v. Tom,* 702 F.2d at 789–90 n. 1; *see also* Field, *Abstention in Constitutional Cases,* 122 U.Pa.L.Rev. 1071, 1092·(1974) (arguing in favor of "[l]imiting abstention to cases in which the state law issue is *extremely* unclear"; (emphasis added)). Thus, even though the district court said that "[t]here have been few cases which interpret the California code sections which are involved in this case," 565 F.Supp. 1081, 1090, that alone would not mandate abstention.

Although several interrelated provisions of California law are raised by one or the other of the parties, the facts of this case, and the express language of the provisions that determine its results, are such that it is not necessary to resolve any unclear questions of state law. The one legal theory that the district court seems to be suggesting may readily be determined to be wholly without foundation. Then, when the simple critical factual question raised by the district court is isolated and given even the most cursory consideration, the outcome of the case becomes absolutely clear; whatever uncertain state law questions may otherwise be said to exist are no longer of any possible relevance. In short, the majority's entire list of "uncertain" state law questions consists of questions that we need not, and should not, resolve in this case. Accordingly, the majority's invocation of the abstention doctrine is unnecessary and inappropriate.

## THE DISTRICT COURT'S DECISION

It is clear that under California law the City was required to determine whether Kollsman's application was complete and notify him in writing of that determination by November 26, 1978; in addition, if the City determined that the application was not complete it was required to specify the deficient parts of the application in the written notification. There can be no dispute as to the state law on those points.[5]

---

4. I agree with the district judge that the effect of any decision here as to the state law questions, whatever it might be, will for practical reasons be so limited that the first criterion is not met. *See infra* p. 843.

5. As enacted in 1977, with an effective date of January 1, 1978, Cal.Gov't Code § 65943 (Deerings 1979) stated that:

> Not later than 30 calendar days after any public agency has received an application for a development project, such agency shall determine in writing whether such application is complete and shall immediately transmit such determination to the applicant for the development project. In the event that the application is determined not to be complete, the agency's determination shall specify those parts of the application which are incomplete

and shall indicate the manner in which they can be made complete.

However, Cal.Gov't Code § 65924 (Deerings 1979) as enacted in 1977 and amended in 1978 established a different time limitation for applications, like Kollsman's, filed before, ·but not determined to be complete by, January 1, 1978. Section 65924, in relevant part, states that

> [w]ith respect to such application received prior to January 1, 1978, but not determined to be complete as of that date, a determination that the application is complete or incomplete shall be made not later than 60 days after the effective date of the act amending · this section in 1978.

Because section 65924 became effective on September 26, 1978, the City had 60 days from September 26, 1978, or until November 26, 1978, to determine whether Kollsman's applica-

The City informed Kollsman in a letter dated November 22, 1978, that his application had "been determined to be incomplete," and stated what information was missing from the application. The district court seemingly relied on two grounds in holding that by sending the letter the City accepted the application as complete on November 22, 1978. First, the district court concluded that the application in fact was complete under California law; it then apparently decided that, for that reason, the letter must be read as having the opposite effect of its stated purpose. Second, the district court apparently read a subsequent letter of November 14, 1979 as somehow reversing, with retroactive effect, the plain meaning of the letter of November 22, 1978. Neither of these arguments can withstand any level of scrutiny, and neither purports to rely on any principle of California law.

The district court's unarticulated legal theory that if an application is in fact complete, a determination that it is incomplete constitutes a determination that it is complete is highly ingenious but wholly unmeritorious. Moreover, even assuming that the application did in fact contain all the information required by California law[6]

and that the City's request for further information was erroneous or made in bad faith, the City's one year period for approving a complete application still could not have commenced to run earlier than November 26, 1978, if at all.

Assuming the answer to every theoretically unclear state law issue to be favorable to Kollsman's position, the one year period for approval or disapproval would have begun on November 26, 1978 because that was the date on which, under the California statute, the City was required to make its determination as to the completeness of Kollsman's application.[7] The only possible way the one year period could have commenced to run before November 26, 1978 would have been not only for the City's finding of incompleteness to be deemed a finding of completeness, but even more critical, for the City to have somehow obtained notice that such was the paradoxical effect of its request for further information. While it may be argued that under some circumstances a City may have notice that an application will be deemed complete if it fails to act on a date by which it is required to decide whether or not the application is complete, I am aware of no theory under which the City of Los Angeles could

tion was complete. Neither the district court nor any party disputes the applicability of this section to Kollsman's appeal.

**6.** The letter indicated that, along with other information, an environmental impact report (EIR) was missing from the application. The parties disagree as to whether under California law Kollsman was required to file an EIR. Given the proper resolution of the case, *see infra* pp. 841–843, I find it wholly unnecessary to resolve the question of whether an EIR was required to be submitted with the application.

**7.** We may assume, for example that under California law Kollsman's application would have been deemed complete if the City had failed to act by November 26, 1978. We can also assume that Kollsman's application contained all the information required by applicable statutes. We can even assume that under California law a bad faith response is treated in the same manner as a failure to respond at all and that in this case the City's response was made in bad faith. I make these assumptions *arguendo* although in

my opinion there is no statutory basis for deeming Kollsman's application to be complete under any circumstances. Cal.Gov't Code § 65943 (Deerings 1984) was amended in 1979 (and the amendment became effective on October 2, 1979) to add a new second sentence: "If such written determination is not made within 30 days after receipt of the application, the application shall be deemed complete for purposes of this chapter." Because his application was filed in January 1977, this new "deemed complete" provision to section 65943 did not apply to Kollsman's application. Section 65924 did, instead. But even if the amendment to section 65943 were applied retroactively and to applications subject to the separate time limitation of Cal.Gov't Code § 65924 (Deerings 1979), *see supra* note 5, under the "60 days after the effective date" provision of the latter section the application could not have been deemed complete until November 26, 1978. Therefore, the City's disapproval on November 26, 1979, would have fallen within the one year limitations period of Cal. Gov't Code §§ 65950, 65956(b) (Deerings 1979). Accordingly, we need not address any of the "unclear" state law questions.

be said to have been afforded notice that its preliminary determination as to incompleteness and its request for further information would trigger the running of a one year statute that commences, according to its terms, only when the application is "accepted as complete." [8]

Thus, the district court's decision must rest on its second theory—its apparent resolution of a factual issue it perceived to be raised by the two letters sent by the City to Kollsman. The November 22, 1978 letter was, as we have noted, clear and unambiguous. It found Kollsman's application incomplete and requested further information. Almost one year later, in a form letter to Kollsman dated November 14, 1979, the City stated that under a recent statutory amendment it "is required to act on certain projects ... within one year of the date of acceptance of an application as complete" and that it planned to disapprove the application on November 21, 1979. The letter contained no specifics about Kollsman's application, except for the date that it was originally filed. It did not state that Kollsman's application had ever been accepted as complete; nor did it state the date on which any such action might have occurred, nor the date on which the City was required to approve or disapprove his application. In fact, the letter stated specifically that the application "has been held pending receipt of requested additional materials." Thus, on its face the November 14, 1979 letter in no way reverses, or even contradicts, the November 22, 1978 one; in fact, it is in some important respects consistent with the earlier letter.

The district court read the letter as "a stroke of conscience," 565 F.Supp. at 1096, and concluded that it demonstrated that the City had accepted the application as complete on November 22, 1978. This factual conclusion is wholly contrary to the evidence and to all rules of logic. It is inconceivable that the November 14, 1979 letter—a form letter that was devised to comply with a recent amendment to a statute and was in significant respects consistent with the November 22, 1978 letter—could serve to reverse completely the plain meaning of the earlier letter so that an express statement that the application was *incomplete* must be read retroactively as stating that the application was *complete*. The majority says that "[t]he district court's rationale for concluding that the application must be deemed complete on November 22, 1978, is somewhat opaque." Majority opinion p. 835 n. 12. I disagree. Rather than merely opaque, the district court's factual conclusion is, in my opinion, bizarre, as well as wholly and clearly erroneous.

There is, in fact, only one possible interpretation of the November 22, 1978 letter: Kollsman was notified on November 22, 1978 that the City had determined that his application was incomplete; the City's letter meant and continued to mean precisely what it said and not the opposite. That meaning could not be changed, retroactively or otherwise, by a subsequent letter. Moreover, there are various possible explanations for the City's action in sending the November 14, 1979 form letter. The letter could have been sent to Kollsman (1) because the City was making one final attempt to obtain information it had been seeking for some time, (2) because the City had decided to disapprove *all* applications in which the parties failed to supply requested information, despite the fact that no formal disapproval was required with respect to applications previously found to

8. Cal.Gov't Code § 65950 (Deerings 1979) states, in relevant part, that "any public agency which is the lead agency for a development project shall approve or disapprove such project within one year from the date on which an application requesting approval has been received and *accepted as complete by such agency.*" (emphasis added). Section 65950 was amended in 1983. The amendments become effective on January 1, 1990 and therefore do not bear upon Kolls- man's application. Even making all the assumptions set forth in note 7, *supra* there is no way the City could have *known* that all the statutory construction issues, including the obviously insuperable bar of retroactivity, would be decided in an arbitrary and erroneous manner *and* that in addition its sending of its November 22, 1978 letter of incompleteness would be treated by the district court as constituting a determination of completeness.

be incomplete, (3) out of bureaucratic confusion over whether the recent amendment to the statute required new disapproval letters in cases of longstanding incomplete applications, or (4) simply out of an excess of caution. It is of no significance which explanation is correct, nor is it significant that the City could have sent an individualized letter that more clearly specified its purpose and that was more narrowly tailored to Kollsman's situation. What matters for the purposes of the case before us is that, as I have said, the 1979 letter could not under any theory serve to reverse, retroactively, the plain meaning of the 1978 letter. Of equal importance, even if a district court did have the discretion to give such effect to the 1979 letter, there is no means by which retroactive notice to the City could serve to afford it the one-year statutory period within which to approve or disapprove a completed application.

After an application is accepted as complete, the City is required to approve or disapprove it within one year. Cal.Gov't Code § 65950 (Deerings 1979).[9] Failure to do so is deemed to constitute approval.[10] Even assuming that Kollsman's application could be deemed complete as a result of the City's finding it incomplete, as I have already explained, the earliest date on which it would have been deemed complete would have been November 26, 1978. Thus, at worst, the City had until November 26, 1979 to approve or disapprove the application. It acted within that deadline when it sent a letter of disapproval on that date.

In sum, despite the majority's statements to the contrary, there are no uncertain state law questions that we need to resolve. Rather, to reach the proper result, we need only resolve a factual question with an obvious answer.

Abstention was improper for another reason as well. There is no "sensitive area of social policy" implicated here. Although zoning may generally involve sensitive areas of social policy, this narrow dispute does not.

The specific issues raised here are far from sensitive if for no other reason than that they will almost certainly never be raised again. As the district court recognized, there is "little likelihood that the future will bring State Court decisions on applications which were filed prior to January 1, 1978 and remain undetermined. In this respect, the Kollsman case may be unique. At least the possibility of additions to the species has long been extinct." 565 F.Supp. at 1090.

In short, the majority errs in stating that Kollsman's claim "raises difficult state law issues of great importance to the people of California." Majority Opinion slip op. p. 3053, p. 833. We need not decide any difficult or unclear questions of state law, but only a simple factual issue—the meaning of an unambiguous letter. Moreover, because most of the issues the parties discuss in the briefs probably will never be raised again, it is wrong to say that they are of great, or even any, importance to the people of California.

In conclusion, because two of the three requirements for abstention have not been satisfied, the majority errs in invoking the doctrine.

## THE ADVERSE EFFECTS OF ABSTENTION

The majority's holding that the district court abused its discretion in not abstaining will unnecessarily delay resolution of Kollsman's claims for many years. Assuming that the plaintiffs have the necessary funds and stamina to pursue this litigation indefinitely, the state law issues will at some point be resolved in favor of the City, on one ground or another, and the federal courts will ultimately, if belatedly, be required to resolve the constitutional questions. In a decision holding that a district court properly decided the state law issues before it, the Supreme Court con-

9. *See supra* note 8.

10. Cal.Gov't Code § 65956(a) (Deerings 1979) provides that "[i]n the event that a lead agency or a responsible agency fails to act to approve or to disapprove a development project within the time limits required by this article, such failure to act shall be deemed approval of the development project."

demned the delay resulting from unnecessary application of the abstention doctrine. *Meredith v. Winter Haven,* 320 U.S. 228, 237, 64 S.Ct. 7, 12, 88 L.Ed. 9 (1943); *see* C. Wright, *Law of Federal Courts* § 52, at 305 (recognizing that *Pullman* abstention has "[i]n a number of well-known cases ... led to delays of many years before the case was finally decided on its merits or limped to an inconclusive end" (footnotes omitted)).

Here, the district court had jurisdiction over both the federal and state law claims; absent extraordinary circumstances, the plaintiff should not be deprived of the right to have his claims resolved in a federal forum. Furthermore, the delay that will be caused by unnecessary and improper abstention in this case is far longer than the two year delay that the Supreme Court criticized in *Winter Haven.*

In January 1977, Kollsman submitted the development proposal to the City. In March 1977, he filed this complaint. The district court decided the case in February 1983. We heard the appeal in January 1984. The majority's decision will effectively render moot the district court proceedings and send the state issues to the California courts for a new beginning. This will, of course, delay for many years the final resolution of this dispute.

The suit has already outlived the original plaintiff, Paul Kollsman. The Kollsman estate will be most fortunate indeed if it is able to resolve even the simple and unimportant state law aspect of this litigation by 1987—ten years after the time the original application was filed. The case will then return to the federal courts for resolution of the federal issues unless by that time the plaintiffs have abandoned their rights in despair. In my opinion, we have a legal duty to exercise our jurisdiction now.

### THE MERITS OF THE STATE LAW ISSUES

In order to discuss the abstention questions fully, it has been necessary to point out why I believe the district judge decided the merits of the state-law questions erroneously. I would, for the reasons I have already discussed, reach those merits and reverse the district court's decision.

### CONCLUSION

Because there are no unclear questions of state law that require resolution, because a sensitive social policy is not implicated, and because the state law issues are in any event of little or no importance to the people of California, the majority errs in invoking the abstention doctrine. To dispose of this case, we need only resolve a simple factual question with an obvious answer. By attempting to make abstention the absolute rule in zoning cases rather than the exception in all cases, the majority does a disservice to the litigants, who deserve, at a minimum, a reasonably prompt resolution of the federal issues that are determinative of this lawsuit. We should allow the already long delayed dispute to proceed to an orderly resolution. The abstention doctrine and its accompanying delay should be reserved for cases involving extraordinary circumstances.

The district court's decision on the state law questions should be reversed on the merits and the case remanded so that Kollsman's constitutional claims may be resolved. I believe that the majority errs in vacating the district court's decision on the basis of the abstention doctrine. I therefore dissent.