**CEDAR SHAKE AND SHINGLE BUREAU; Chemco, Inc.; Wesco, Inc., Plaintiffs–Appellants,**

v.

**CITY OF LOS ANGELES, Defendant–Appellee.**

**No. 91–56527.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 5, 1993.

Decided June 30, 1993.

Martin E. Rosen, Barger & Wolen, Los Angeles, CA, for plaintiffs-appellants.

L. Wayne Mooney, Deputy City Atty., Los Angeles, CA, for defendant-appellee.

Before: WALLACE, Chief Judge; O'SCANNLAIN and FERNANDEZ, Circuit Judges.

O'SCANNLAIN, Circuit Judge:

We are called upon to consider whether the federal courts should abstain from deciding a case which turns on a state law preemption question not yet resolved by California state courts, notwithstanding the existence of an Attorney General's opinion directly on point.

I

This lawsuit is a challenge to a city ordinance banning the use of wood shake and shingle roofing materials in new construction in the City of Los Angeles ("the city"). Appellant Chemco, Inc. manufactures pressure impregnated fire retardant wood shakes and shingles, which are created by injecting at high pressure a fire retardant chemical into ordinary wood shakes. While untreated wood shakes are highly inflammable, pressure impregnated shakes are, to a certain degree, fire retardant. Appellant Wesco, Inc. is a distributor of the treated shakes; appellant Cedar Shake and Shingle Bureau is a trade association representing the interests of the wood shake and shingle industry. We will refer to the appellants collectively as "Cedar Shake."

Los Angeles Municipal Code ("LAMC") § 91.3203(b) requires roof coverings on all new construction within the city to be fire retardant. The term "fire retardant roof" is defined in LAMC § 91.3203(e) by reference to the Uniform Building Code ("UBC"). The UBC defines a fire retardant roof as one that meets the Class A or Class B standards for fire retardancy. The UBC standard lists "[a]ny roof covering system of wood shingles or shakes having a Class B rating" as an example of roofing materials that would meet the standard.[1]

In 1989, through Los Angeles City Ordinance No. 165,047 ("the ordinance"), the city amended its definition of fire retardancy to *exclude* all wood shakes and shingle roofs, including those that could meet the Class B standard. The ordinance did not exclude any other Class B roofing systems; it is this ordinance that is challenged here.

In contrast to the city's scheme banning all wood shake roofs, the California Building Standards Code, Title 24 of the California Code of Regulations, *allows* wood roofs except in certain fire severity districts. Even in high fire severity districts, wood roofs are allowed if they meet the minimum Class C

---

1. An untreated shake roof is highly inflammable and as such does not fit into any of the fire retardancy classes—A, B, or C—identified by the UBC. Any wood shake roof that could meet the Class B standard would have to be treated.

rating. The city's regulations are thus more stringent than the state's.

Shortly after the ordinance banning all wood roofs in Los Angeles was passed, Cedar Shake brought this action against the city in the Central District of California, pursuant to 28 U.S.C. § 2201, challenging the ordinance on two grounds. Cedar Shake argued first that the ordinance was preempted by the state statutory scheme because the state intended to occupy the field in construction standards, and second that the ordinance violated the Equal Protection Clauses of the United States and California Constitutions because it prohibits the prospective use of Class B wood as a roofing material while permitting the use of other Class B products. The city moved for *Pullman* abstention. The district court refused to abstain, but granted summary judgment in favor of the city on both the preemption and the equal protection claims. Cedar Shake appeals. The district court had jurisdiction over the federal constitutional claim under 28 U.S.C. § 1331, and pendent jurisdiction over the state claims. We have jurisdiction under 28 U.S.C. § 1291.

## II

We first consider whether the district court was required to abstain from deciding this case in light of the principles established in *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).

The *Pullman* abstention doctrine is a "narrow exception to the district court's duty to decide cases properly before it." *Kollsman v. City of Los Angeles*, 737 F.2d 830, 833 (9th Cir.1984), *cert. denied*, 469 U.S. 1211, 105 S.Ct. 1179, 84 L.Ed.2d 327 (1985). "*Pullman* allows postponement of the exercise of federal jurisdiction when 'a federal constitutional issue ... might be mooted or presented in a different posture by a state court determination of pertinent state law.'" *Id.* (quoting *C–Y Development Co. v. City of Redlands*, 703 F.2d 375, 377 (9th Cir.1983), in turn quoting *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 189, 79 S.Ct. 1060, 1063, 3 L.Ed.2d 1163 (1959)).

A district court abstaining under *Pullman* must dismiss the state law claim and stay its proceedings on the constitutional question until a state court has resolved the state issue. We review the district court's decision not to abstain for an abuse of discretion. *Kollsman*, 737 F.2d at 833. However, the abuse of discretion standard "does not preclude [us from] invoking abstention in cases in which there exist compelling reasons to allow state courts to resolve issues of state law." *Id.* On appeal, both parties agree that the district court should have abstained. However, that fact does not end our inquiry. A district court has no discretion to abstain where the abstention requirements are not met; whether those requirements are met is reviewed de novo. *Gartrell Constr. Inc. v. Aubry*, 940 F.2d 437, 441 (9th Cir.1991) (*Younger* abstention).

Three factors must be present before abstention is allowed under *Pullman:* (1) the complaint must involve a "sensitive area of social policy" that is best left to the states to address; (2) "a definitive ruling on the state issues by a state court could obviate the need for constitutional adjudication by the federal court"; and (3) "the proper resolution of the potentially determinative state law issue is uncertain." *Kollsman*, 737 F.2d at 833.

## A

The first two factors are unquestionably present in this case. First, the preemption question concerns sensitive issues of social policy. The interpretation of building codes, especially those related to fire safety, is an area of especial local concern into which federal intrusion is highly undesirable. *Cf. C–Y Development*, 703 F.2d at 377 (land use planning is a sensitive area of social policy); *Santa Fe Land Improvement Co. v. City of Chula Vista*, 596 F.2d 838, 840 (9th Cir.1979) (same). More important, whether the city ordinance is preempted by state law is a sensitive and complex issue involving the distribution of power between the state and local governments.

Second, resolution of the preemption question could obviate the need for a constitutional ruling. If a state court were to determine

that the local ordinance is preempted, the ordinance would be invalidated and a federal court would not have to decide Cedar Shake's equal protection claim.

Therefore, the abstention inquiry turns on the third factor: if the resolution of the preemption question is unclear, the district court would have abused its discretion in failing to abstain.

## B

### 1

Article XI, section 7 of the California State Constitution provides that municipalities may make and enforce ordinances "not in conflict with general laws." An ordinance in conflict with state law is void. *See Bruce v. City of Alameda,* 166 Cal.App.3d 18, 212 Cal.Rptr. 304 (1985). "Conflicts exist if the ordinance ... contradicts[ ] or enters an area fully occupied by general law, either expressly or by legislative implication. If the subject matter or field of the legislation has been fully occupied by the state, there is no room for supplementary or complementary local legislation, even if the subject [was] otherwise one properly characterized as 'a municipal affair.' " *Cohen v. Board of Supervisors,* 40 Cal.3d 277, 290–91, 219 Cal.Rptr. 467, 707 P.2d 840 (1985) (citations omitted).

It is clear that the ordinance does not contradict state law. A citizen can comply with both simply by complying with the more stringent city scheme. *See generally People v. Orozco,* 266 Cal.App.2d 507, 511, 72 Cal. Rptr. 452 (1968). We must consider, therefore, whether the California legislature intended to occupy the field in building standards relating to housing.

Although the California Supreme Court has not addressed the question, the California Court of Appeal has determined that the state has intended to occupy the field of housing construction standards. *See Briseno v. City of Santa Ana,* 6 Cal.App.4th 1378, 1382–83, 8 Cal.Rptr.2d 486 (concluding that current scheme occupies the field), *review denied* (Cal.1992); *Danville Fire Protection Dist. v. Duffel Fin. and Constr. Co.,* 58 Cal. App.3d 241, 129 Cal.Rptr. 882 (1976) (concluding that the previous, less comprehensive

scheme occupied the field). We are persuaded by the analysis in *Briseno.* As the court observed, "[o]ne need only track the history of the state's housing laws to appreciate the Legislature's desire to preempt local regulation generally." *Briseno,* 6 Cal.App.4th at 1382, 8 Cal.Rptr.2d 486. Prior to 1970, the State Housing Law expressly provided that counties and municipalities were free to "enact ordinances or regulations imposing restrictions equal to or greater than those imposed by the State Housing Law." Cal. Health & Safety Code § 17951(a) (amended) (quoted in *Briseno,* 6 Cal.App.4th at 1382, 8 Cal.Rptr.2d 486). In contrast:

> "In 1970, the Legislature amended section 17951 by deleting the provision authorizing local agencies to adopt ordinances 'equal to or greater' than those promulgated by the state, ... and made other substantial revisions in the State Housing Law.... The revisions directed [the state] to adopt rules and regulations imposing 'the same requirements' as are contained in the various uniform building codes ... and required every city and county to adopt ordinances or regulations imposing the same requirements...." It is clear that the 1970 amendments to the state housing laws evidence a legislative intent to generally preempt local regulation in the field.

*Briseno,* 6 Cal.App.4th at 1382, 8 Cal.Rptr.2d 486 (quoting *Baum Elec. Co. v. City of Huntington Beach,* 33 Cal.App.3d 573, 577, 109 Cal.Rptr. 260 (1973)).

As the *Briseno* court reasoned, that the legislature intended to occupy the field can also be inferred from the fact that the legislature "has prescribed the manner in which local authorities may adopt ordinances that vary from the uniform codes." *Id.* For example, section 17958.5(a) of the California Health and Safety Code specifies that local governments may enact more restrictive ordinances when certain conditions are met and the local government makes specific findings. "[I]t makes little sense to prescribe a narrow set of circumstances in which local entities can override state law if those entities are already free to override state law with impunity." *Id.*

Because the state legislature has evinced an intent to occupy the field of building standards, a local government is precluded from enacting building standards that differ from state standards unless a state statute specifically authorizes the local government to do so. The city argues that several sections of the state code provide the needed authorization.

2

a

The most likely source of authority for the ordinance is section 17958 of the California Health and Safety Code.[2] Both parties agree that section 17958 allows local governments to enact ordinances imposing building standards that are more stringent than state standards adopted *by the Department of Housing and Community Development* ("Department"). Cedar Shake argues, however, that section 17958 does not authorize the enactment of building standards that are more stringent than state standards adopted by the *State Fire Marshal* ("Fire Marshal").[3]

Section 17958 provides in relevant part:

[A]ny city or county may make changes in the provisions *adopted pursuant to Section 17922* and published in the State Building Standards Code ... upon express findings pursuant to Sections 17958.5 and 17958.7.[4]

(Emphasis added.) Cedar Shake argues that only those standards that are adopted by the Department of Housing and Community Development are "adopted pursuant to section 17922." The city argues conversely that both the standards adopted by the Department and those adopted by the Fire Marshal are adopted pursuant to section 17922. We cannot say with certainty which position the California Supreme Court would adopt. While the city makes a persuasive argument, the California Attorney General has issued

---

2. Unless otherwise noted, all further statutory references are to the California Health and Safety Code.

3. *The structure of the state statutory scheme* regulating housing construction is complicated, but must be understood before this argument can be evaluated. Division 13 of the California Health and Safety Code regulates housing generally. Part 1.5 of Division 13 regulates buildings used for human habitation and is known as the "State Housing Law." Cal.Health & Safety Code § 17910. Section 17921 concerns the promulgation of building standards relating to housing.

Section 17921(a) requires the Department to promulgate building standards for the construction of dwelling units generally. Section 17921(b) requires the State Fire Marshal to promulgate building standards specifically relating to fire and panic safety. In promulgating the standards, the agencies are directed to adopt provisions from Model Codes, such as the UBC, and to recommend amendments to the Model Codes only where necessary. The entire promulgation process is referred to in the code as "adoption."

After adopting the standards, the Fire Marshal and the Department are required to submit the standards to the State Building Standards Commission. The Commission evaluates the recommendations and, once approved, the standards are codified in the California Building Standards Code, Title 24 of the California Code of Regulations ("CCR"). For the most part, the State Building Standards Code is identical to the UBC, although there are some amendments reflecting geological or climatic conditions—such as earth-

quakes—that are of greater concern in California than in other areas of the country.

Although it may appear that the Department and the Fire Marshal are charged with adopting standards relating to different aspects of housing construction, in operation the agencies adopt the same standards with only slight variation. Title 24 of the CCR contains an adoption table that spells out precisely which model codes have been adopted by each agency. The table reveals that the Department adopted the entire UBC, but not the state amendments, while the Fire Marshal adopted the entire UBC with the state amendments. The UBC allows wood roofs in residential construction without regard to the area, while the state amendments require wood roofs to meet the Class C standard if they are to be used in high fire severity zones. While the final version of the state standards includes the more restrictive state amendments, the bulk of the state standards are taken directly from the UBC, the adoption of which, in its entirety, was proposed simultaneously by both agencies.

4. Section 17958.5 provides in relevant part:

[I]n adopting the ordinances or regulations pursuant to Section 17958, a city or county may make such changes or modifications in the requirements contained in the provisions published in the California Building Standards Code and the other regulations adopted pursuant to Section 17922 as it determines, pursuant to the provisions of Section 17958.7, are reasonably necessary because of local climatic, geological, or topographical conditions.

Section 17958.7 outlines the procedure by which the findings must be filed.

an opinion consistent with Cedar Shake's position.

Section 17922(a) has the effect of incorporating into the State Housing Act the building standards related to housing that are published in the State Building Standards Code. The statute provides in relevant part:

> [T]he building standards *adopted and submitted by the department* for approval pursuant to Chapter 4 ... of Part 2.5 *and the other rules and regulations, which are contained in Title 24* of the California Administrative Code [now the CCR], *adopted*, amended, or repealed from time to time *pursuant to this chapter* shall be adopted by reference....

Cal.Health & Safety Code § 17922(a) (emphasis added).

The city argues that the plain language of the statute indicates that the Fire Marshal's standards are "adopted pursuant to section 17922." Section 17922(a) applies to *both* "building standards adopted and submitted by the department" *and* to "the other rules and regulations, which are contained in Title 24 of [the CCR], adopted ... pursuant to [chapter 2 of Part 1.5]." The standards adopted by the Fire Marshal are codified in Title 24 of the CCR. Moreover, the Fire Marshal's standards are adopted pursuant to chapter 2, specifically section 17921(b). Thus, so long as the Fire Marshal's standards can be classified as "other rules and regulations," they are issued "pursuant to 17922."

The city makes a highly plausible argument that the Fire Marshal standards should be considered "other rules and regulations." "Building standards" and "rules and regulations" are not mutually exclusive categories. Instead, building standards are, in fact, a subset of "rules and regulations." Section 18909(a) defines "building standard" for purposes of Chapter 2. *See* Cal.Health & Safety Code § 17920(b) ("As used in this part[,] ... '[b]uilding standard' means building standard as defined in Section 18909."). Section 18909(a) provides:

> "Building standard" means any *rule, regulation*, order, or other requirement, including any amendment or repeal of that re-

quirement which [regulates the materials or construction techniques in building].

Moreover, section 18919 provides in part: "'Regulation' includes building standards." Thus, because a building standard is merely a specific type of regulation, the building standards promulgated by the Fire Marshal arguably fall within the general category of "other rules or regulations." Under this analysis, the Fire Marshal's standards are "adopted pursuant to section 17922" and the city may adopt more stringent standards upon making the findings referenced in section 17958.

Although the city's construction of section 17922 is quite reasonable, the California Attorney General has issued an opinion directly on point that reaches the opposite conclusion. The question presented was precisely that which we confront here: "Under sections 17922, 17958.5 and 17958.7 of the State Housing Law, may cities and counties adopt building standards relating to fire and panic safety that are more stringent than state standards adopted by the State Fire Marshal?" 72 Ops.Cal.Atty.Gen. 180, 180–81 (Sept. 14, 1989). The Attorney General concluded that (1) the state intended to occupy the field of housing construction standards; (2) a specific grant of authority is thus needed before a local government may enact a more stringent requirement; and (3) section 17958 does not provide that authority because only standards adopted by the Department are "adopted pursuant to section 17922." The Attorney General's analysis focuses on the fact that the legislature could have referred specifically to standards adopted by the Fire Marshal had it intended to include them in section 17922.

█ Both the interpretation offered by the city and the Attorney General's opinion are reasonable. That the Attorney General has issued a reasonable opinion on the question, however, is not dispositive. Although "[o]pinions of the [state] Attorney General are ... 'generally regarded as highly persuasive,'" *Harris County Comm'rs Court v. Moore*, 420 U.S. 77, 87 n. 10, 95 S.Ct. 870, 877 n. 10, 43 L.Ed.2d 32 (1975) (citations omitted), we are not bound by them. *Prescott v. United States*, 731 F.2d 1388, 1393

(9th Cir.1984). In light of the plausible analysis offered by the city, we cannot say without doubt that the California Supreme Court would follow the Attorney General. We must, therefore, conclude that, under California law, whether section 17958 authorizes the city to adopt ordinances more stringent than those adopted by the Fire Marshal is uncertain.

#### b

The other statutes referenced by the city provide no more certain authority for the ordinance. Section 18941.5(c) provides in relevant part:

> Neither the State Buildings Standards Law ... nor the application of building standards contained in this section, shall limit the authority of a city, county, or city and county to establish more restrictive building standards reasonably necessary because of local climatic, geological, or topographical conditions. The governing body shall make the finding required by Section 17958.7 and the other requirements imposed by Section 17958.7 shall apply to that finding.

The California Attorney General rejected the argument that the statute provides an independent source of authority for local ordinances more restrictive than state law:

> Subdivision (c) of section 18941.5, as amended, does not provide an independent grant of authority for cities and counties to act. Rather it speaks in negative terms of not limiting the authority of those local entities to establish more restrictive building standards.... The grant of such "authority" must therefore be found elsewhere....

72 Ops.Cal.Atty.Gen. 180, 191 (Sept. 14, 1989). As this interpretation is reasonable, we cannot say with certainty that the statute provides an independent grant of authority.

Similarly, we cannot conclude with certainty that section 13143.5 provides independent authority for the ordinance. That section was adopted in 1991, two years after the passage of the ordinance. It is unclear under California law whether a subsequent statute can retroactively provide the authority for, and thus rehabilitate, an ordinance that was void as preempted when enacted.

Finally, we reject the city's contention that the State Building Standards Code is intended to set forth minimum standards only, and therefore the city is free to adopt more stringent standards. This is simply a variation on the city's argument that the state did not intend to occupy the field, and, as such, it must be rejected in light of the cogent analysis in *Briseno*. It is clear that the language in Title 24 of the California Code of Regulations referring to "minimum standards" was meant to apply to citizens complying with the code, not to local governments enacting competing codes.

#### C

In sum, it is uncertain whether the ordinance is preempted by state law. Since a definitive ruling on this sensitive issue by a state court could obviate the need for a federal decision on the constitutional claim, we conclude that the district court abused its discretion in failing to abstain.

#### III

Because we conclude that the district court should have abstained, we vacate its judgment and remand with instructions to dismiss the "state preemption" claim. At the request of either Cedar Shake or the city, the district court should retain jurisdiction of the federal constitutional issues pending proceedings in the state courts. *See, e.g., England v. Louisiana State Bd. of Medical Examiners,* 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964); *Kollsman v. City of Los Angeles,* 737 F.2d 830, 837 (9th Cir.1984), *cert. denied,* 469 U.S. 1211, 105 S.Ct. 1179, 84 L.Ed.2d 327 (1985).

VACATED and REMANDED.