21 F.3d 1115
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Lynda Loie PAXTON; Stephen R. Blanchard, Esq., Plaintiffs-Appellants,
v.
OXNARD POLICE DEPT., Defendant-Appellee.
 No. 92-55293.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Aug. 31, 1993.
Decided April 22, 1994.
 
 Before: TANG, CANBY, and BEEZER, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 OVERVIEW
 
 2
 Appellants Lynda Loie Paxton and Stephen R. Blanchard erected signs at their homes in Oxnard, California, protesting the presence of a toxic waste dump on their property. Members of a nearby homeowners association trespassed on their properties and destroyed the signs. Paxton and Blanchard filed a lawsuit under 42 U.S.C. Secs. 1983, 1985, and 1986, alleging that members of the Oxnard Police Department and officials of the City of Oxnard and Ventura County were involved in the destruction (collectively, "the Oxnard defendants"). The district court abstained on the basis of a pending state lawsuit and dismissed the action for failure to state a claim. We have jurisdiction under 28 U.S.C. Sec. 1291, and reverse in part and affirm in part.
 
 BACKGROUND[1]
 
 3
 Sometime in 1985, Paxton and Blanchard discovered that their homes in the "Dunes" subdivision in Oxnard, California, were built on a toxic waste dump. A large number of Dunes homeowners filed suit against the City of Oxnard and several other defendants to force a toxic clean-up or a "buy-out" of their homes. Many residents also erected signs protesting the lack of action by the city and state. In May or June of 1990, Paxton and Blanchard posted signs on their respective properties.
 
 
 4
 On October 25, 1990, Thomas Conway, Shawn Ryan, and Dennis Ryan, acting on behalf of a neighboring homeowners association called the Oxnard Shores Community Association ("the Association"), entered onto Blanchard's property and destroyed his sign by cutting it into pieces with a chain saw. Blanchard returned home during the destruction and began taking pictures of the perpetrators. In an attempt to take Blanchard's camera, Dennis Ryan threatened Blanchard and struck him on the shoulder. When Blanchard tried to stop the perpetrators from leaving, Ryan and the others knocked Blanchard down with their truck and injured him. The appellants allege that the Oxnard Police Department ("OXPD") failed to respond to a "911" call; a police officer later arrived, filed a report, but made no arrests.
 
 
 5
 The next day Conway and others, again acting on behalf of the Association, entered Paxton's yard and painted over her sign in the presence of OXPD Officer Schmalhofer. At that time, Schmalhofer told the resident on Paxton's property that the Association had the right to paint over the sign. Schmalhofer filed a police report but made no arrests. Paxton called the OXPD, spoke to Officer Devorik, and was told that City Attorney Gillig had determined that the Association had the right to destroy the sign based on the covenants, conditions, and restrictions ("CC & R's") on her land. Particularly, the CC & R's restrict the Dunes homeowners from placing or maintaining signs "of any character other than one ordinary 'for sale,' 'for rent,' or 'open for inspection' sign not larger than eighteen (18) by thirty (30) inches in size." [ER Exhibit A, p. 5, p .(e).]
 
 
 6
 Paxton and Blanchard allege that despite numerous requests to the City and County to file charges against those involved in the October 25 and 26 incidents, no charges were filed. Ventura County District Attorney Bradbury's staff informed Paxton and Blanchard that the members of the Association had a good faith belief in the legality of their actions and the assault on Blanchard with the truck may have resulted from fear at the time of the incident, precluding the filing of any criminal charges.
 
 
 7
 Instead, in November of 1990, City Attorney Gillig filed a criminal charge against Paxton for erecting a sign in violation of a Special Use Permit. The matter proceeded to trial, the jury hung, and the trial judge dismissed the charge. The charges were not refiled. In January of 1991, the City also filed a criminal charge against Blanchard for failing to obtain a building permit for his sign. Blanchard obtained the necessary permit in June of 1991, and the charge was dismissed.
 
 
 8
 Paxton and Blanchard filed an action in Ventura County Superior Court against the Association for trespass (but did not name the Oxnard defendants). In response, the Association filed an action in state court against Paxton, Blanchard and other homeowners in the Dunes subdivision, alleging that the signs were in violation of the CC & R's (the "Association Suit").
 
 
 9
 Paxton and Blanchard also filed the instant action under 42 U.S.C. Secs. 1983, 1985, and 1986 against the Oxnard defendants. The district court granted the Oxnard defendants' motion to abstain on the basis of the pending "Association Suit," and dismissed the entire action for failure to state a claim.
 
 DISCUSSION
 I. Abstention
 
 10
 This court reviews de novo "[w]hether a case meets the requirements of a particular abstention doctrine." Mission Oaks Mobile Home Park v. City of Hollister, 989 F.2d 359, 360 (9th Cir.1993), cert. denied, 114 S.Ct. 1052 (1994). If the requirements are met, we review the district court's decision to abstain for an abuse of discretion. Id.
 
 
 11
 "Abstention from the exercise of federal jurisdiction is the exception, not the rule. Absent significant countervailing interests, the federal courts are obliged to exercise their jurisdiction." World Famous Drinking Emporium v. City of Tempe, 820 F.2d 1079, 1082 (9th Cir.1987) (internal citations omitted). Under Younger v. Harris, 401 U.S. 37 (1971), and its progeny, abstention is appropriate if (1) there are ongoing state proceedings; (2) the proceedings implicate important state interests; and (3) the state proceedings provide an adequate opportunity to raise federal questions. Id.[2]
 
 
 12
 There is no dispute that there is an ongoing state proceeding. Specifically, in the "Association Suit" filed against the Dunes homeowners, the Association seeks to enjoin the homeowners from erecting signs in violation of the CC & R's.
 
 
 13
 However, the "Association Suit" does not implicate important state (or municipal) interests for which abstention is necessary. "In evaluating whether the proceedings implicate important state interests, we examine the nature of the proceedings." Id. at 1082. Important state interests have been established where the state proceedings: (1) closely relate to ongoing criminal proceedings; (2) "vindicate important state policies;" or (3) "are necessary for the functioning of the state judicial system." Id. at 1082-83. None of these factors are met in this case.
 
 
 14
 There are no ongoing state criminal proceedings. The Association Suit does not involve interpreting any statute, regulation, ordinance, or state program. See Trainor v. Hernandez, 431 U.S. 434, 444 (1977) (important state policy in safeguarding the fiscal integrity of state public-assistance programs); Mission Oaks Mobile Home Park, 989 F.2d at 361 ("California has a substantial interest in enforcing and considering the constitutionality of mobile home park rent control ordinances."); World Famous Drinking Emporium, 820 F.2d at 1083 (civil action "in aid of and closely related to [a] zoning ordinance and akin to a criminal prosecution" established an important state interest). Nor does the state or municipality have an important interest in determining the validity of the CC & R's. See Miofsky v. Superior Court, 703 F.2d 332, 338 (9th Cir.1983) (private tort litigation does not implicate vital state interests).
 
 
 15
 Most significantly, none of the Oxnard defendants are parties to the Association Suit. See Middlesex County Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 434 (1982) (the State's interest was evidenced by the fact that the State Ethics Committee agency is "the named defendant in the [federal] suit and was the body which initiated the state proceedings"); Trainor, 431 U.S. at 444 (the fact that the state was a party to both state and federal suits was a factor in determining whether important state interests were involved); Carras v. Williams, 807 F.2d 1286, 1291-92 (6th Cir.1986) ("a federal court should not abstain from a case seeking monetary relief when the suit arises from a state judicial proceeding to which the state is not a party absent extraordinary circumstances.... a civil suit between private litigants presented no 'extraordinary circumstances.' "); Womens Services v. Douglas, 653 F.2d 355, 356 (8th Cir.1981) (where the parties in the federal and state proceedings are different, Younger abstention warranted only when the state interests are "so intertwined" with a parties' interests in the state proceeding); Ealy v. Littlejohn, 569 F.2d 219, 233 (5th Cir.1978) (abstention applies only when the state is a party to the pending state litigation).
 
 In Miofsky, we stated:
 
 16
 In determining whether to expand the Younger doctrine to make it applicable to civil litigation generally, we must bear in mind the fundamental principle that federal courts have an "unflagging obligation" to exercise their jurisdiction. "This obligation is particularly weighty when those seeking a hearing in federal court are asserting ... their right to relief under 42 U.S.C. Sec. 1983." Although Younger and its progeny teach us that principles of federalism and comity sometimes offset this obligation to entertain civil rights actions, the doctrine of abstention remains "an extraordinary and narrow exception to the duty of a district court to adjudicate a controversy properly before it." To extend the Younger doctrine to encompass conventional civil litigation would effectively permit the exception to consume the rule.
 
 
 17
 703 F.2d at 338 (emphasis added; internal citations omitted).
 
 
 18
 In accordance with our prior case law, we hold that the district court erred by abstaining under Younger.[3] There is also no basis for abstention under Railroad Comm'n v. Pullman Co., 312 U.S. 496 (1941), because the resolution of the state suit will not moot the federal suit. See Cedar Shake and Shingle Bureau v. City of Los Angeles, 997 F.2d 620, 622 (9th Cir.1993).
 
 II. Dismissal
 
 19
 We review de novo a dismissal for failure to state a claim under Fed.R.Civ.P. 12(b)(6). Oscar v. University Students Co-Op Ass'n, 965 F.2d 783, 785 (9th Cir.) (en banc), cert. denied, 113 S.Ct. 655 (1992). "In reviewing a 12(b)(6) dismissal, all allegations of material fact in the complaint are taken as true and are construed in the light most favorable to the nonmoving party." Id.
 
 
 20
 The complaint generally alleges that the Oxnard defendants "aided and abetted private citizens in the destruction of plaintiffs' property, in the assault on Plaintiff BLANCHARD, and then failed and refused to prosecute the perpetrators for these crimes." [CR Exhibit I, pp. 1-2.]
 
 
 21
 Paxton and Blanchard named Officer Devorik, Officer Schmalhofer, and City Attorney Gillig in the Sec. 1983 count. "A Sec. 1983 claim requires two essential elements: (1) the conduct that harms the plaintiff must be committed under color of state law (i.e., state action), and (2) the conduct must deprive the plaintiff of a constitutional right." Ketchum v. County of Alameda, 811 F.2d 1243, 1245 (9th Cir.1987).
 
 
 22
 Appellants have sufficiently alleged state action to survive a motion to dismiss. Paxton and Blanchard allege that prior to October 24, Gillig or Gillig's staff reviewed the CC & R's and informed members of the Association that the signs could be removed. They also allege that Gillig told Officer Devorik that the Association had the right to enter Appellant-Paxton's yard and destroy Paxton's sign. Devorik thereafter dispatched Officer Schmalhofer to Paxton's house to supervise the destruction. At the scene, Schmalhofer told a resident of Paxton's property that the Association had the right to paint over the sign. See Howerton v. Gabica, 708 F.2d 380, 384 (9th Cir.1983) (police participation in an unlawful eviction gave rise to state action under Sec. 1983).
 
 
 23
 Moreover, the state action alleged may have deprived the appellants of a constitutional right. The complaint alleges that appellants' property was taken and destroyed without notice and hearing, in violation of the due process clause of the Fourteenth Amendment.[4] Dismissal for failure to state a claim under Fed.R.Civ.P. 12(b)(6) was erroneous as to Paxton's Sec. 1983 claim.[5]
 
 
 24
 However, the claim under 42 U.S.C. Sec. 1985(3) was properly dismissed. To prove a conspiracy in violation of this section, Paxton and Blanchard must establish: "(1) that 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus [lay] behind the conspirators' action,' and (2) that the conspiracy [is] 'aimed at interfering with rights' that are 'protected against private, as well as official, encroachment.' " Bray v. Alexandria Women's Health Clinic, 113 S.Ct. 753, 758 (1993) (quotations omitted).
 
 
 25
 Paxton and Blanchard claim that the Oxnard defendants conspired to harass and force appellants to remove their signs without legal justification, by aiding the Association's destruction of appellants' signs and by having the City Attorney file unfounded criminal charges against them for maintaining their signs. The complaint fails to allege a racial or other special class requiring federal protection of their civil rights. See Sever v. Alaska Pulp Corp., 978 F.2d 1529, 1536 (9th Cir.1992) (section 1985(3) extends beyond race-based classes "only when the class in question can show that there has been a governmental determination that its members 'require and warrant special federal assistance in protecting their civil rights' ") (quotation omitted); cf. Bray, 113 S.Ct. at 759 (the Sec. 1985(3) class "cannot be defined simply as the group of victims of the tortious action") (quotation omitted).
 
 
 26
 For the same reason, Paxton and Blanchard's claims under 42 U.S.C. Sec. 1986 were also properly dismissed. "Section 1986 imposes liability on every person who knows of an impending violation of section 1985 but neglects or refuses to prevent the violation." Sanchez v. City of Santa Ana, 936 F.2d 1027, 1040 (9th Cir.1990), cert. denied, 112 S.Ct. 417 (1991). Because Paxton and Blanchard failed to state a valid Sec. 1985 cause of action, their claim under Sec. 1986 fails as well. Id.
 
 CONCLUSION
 
 27
 The district court erred in abstaining due to the pending state lawsuit brought by the homeowners association against Paxton and Blanchard. Further, the district court erroneously dismissed the Sec. 1983 claims, but properly dismissed all other claims.
 
 
 28
 AFFIRMED IN PART; REVERSED IN PART AND REMANDED FOR FURTHER PROCEEDINGS. PARTIES TO BEAR OWN COSTS ON APPEAL.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 For purposes of determining the propriety of dismissal, the facts alleged by Paxton and Blanchard are taken as true. Oscar v. University Students Co-op Ass'n, 965 F.2d 783, 785 (9th Cir.) (en banc), cert. denied, 113 S.Ct. 655 (1992)
 
 
 [2]
 The Younger doctrine has been extended to civil suits. Middlesex County Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 432 (1982)
 
 
 [3]
 Because the "Association Suit" does not implicate important state interests, we need not address whether the Association Suit provides an adequate opportunity to raise the federal claims
 
 
 [4]
 The appellants' due process rights to notice and hearing do not depend on their First Amendment right to maintain the signs on their property. Moreover, because the present complaint does not allege a First Amendment violation, we need not address that issue
 
 
 [5]
 The Oxnard defendants argue that even if appellants state a cause of action under Sec. 1983, the defendants have qualified immunity. This issue was not argued below and is not properly before the court. Kelson v. City of Springfield, 767 F.2d 651, 657 (9th Cir.1985) (qualified immunity is an affirmative defense and must be pleaded below)